**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

| | |
|---|---|
| Hon. Michael B. Kaplan<br>United States Bankruptcy Judge | 609-858-9360<br>609-989-2259 Fax |

March 3, 2020

Edward Hanratty, Esq.
80 Court Street
Freehold, NJ 07728
*Attorney for Debtors, John and Patricia Cerchia*

Adam D. Greenberg, Esq.
Law Offices of Honig & Greenberg
1949 Berlin Road, Suite 200
Cherry Hill, NJ 08003
*Attorney for Creditor, SLS I, L.L.C.*

          Re:    **John & Patricia Cerchia**
                **Case No.: 19-12655**

Counsel:

      This matter comes before the Court on a motion (ECF No. 64) filed by debtors, John and Patricia Cerchia ("Debtors"), in the above-captioned proceeding, seeking modification of Proof of Claim number 8 filed by SLS I, L.L.C. ("SLS" or "Creditor"). In this regard, the Debtors seek to adjust the claim from $350,425.77 to $217,076.00. The difference lies primarily in the Debtor's effort to have post-petition plan payments applied first to the principal portion of the outstanding tax obligations, rather than the accumulated interest. The Court has read all the submissions and has considered the arguments made during the hearing on January 14, 2020. For the reasons set forth below, the Debtors' motion for modification is DENIED. The claim filed by SLS shall not be modified at the Debtors' request.

1

I.   **Background**

The Debtors own real property located at 53 Belmar Boulevard, Howell Township, New Jersey ("Property"). SLS filed a proof of claim for $309,920.05 as the holder of a tax sale certificate on the Debtors' property. The tax sale certificate was acquired by assignment from the Township of Howell on September 28, 2018, and recorded on October 24, 2017. The Court dismissed, for failure to make payments, the two previous chapter 13 filings by the Debtors (17-22927-MBK, 18-15710-MBK) on November 30, 2017 and November 28, 2018, respectively. The current matter before the Court reflects the Debtors' third chapter 13 filing, which they filed on February 8, 2019.

SLS asserts that they were never given notice of the second bankruptcy filing, and upon learning of the bankruptcy filing, filed an objection to confirmation and for stay relief, as the Debtors were not current in post-petition taxes. The Court denied confirmation of the plan—which sought the same modification of interest as in the present case—and dismissed the case, ultimately causing SLS's stay relief motion to be moot.

As with the previous filing, SLS was not noticed of the 2019 bankruptcy filing, and therefore proceeded with its foreclosure of the tax sale certificate. SLS was successful in obtaining an order fixing the amount, time and place for redemption in the Superior Court of New Jersey, Chancery Division of Monmouth County under docket number F-1708-17. SLS served this order on the Debtors and only then did the Debtors notify SLS of their 2019 bankruptcy filing.

SLS filed its proof of claim for $350,425.77 in the current case, including interest projected over the life of the Plan. The Debtors object to this claim, relying upon their conclusory contention that applicable state and bankruptcy law permit this Court to rule that chapter 13 plan payments should be applied first, over a creditor's objection, to the claim's outstanding principal, and then towards pre and post-petition interest. The Debtors have not provided supporting caselaw and the

Court has not uncovered any relevant authority in support of the Debtors' position. Rather, the Court concludes that New Jersey's tax lien law and the applicable provisions of chapter 13 mandate allowance of SLS's claim as filed.

## II.     Debtors Fail to Negate the Prima Facie Validity of the Creditor's Claim

Pursuant to § 502 of the Bankruptcy Code, "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Furthermore, Rule 3001(f) of the Federal Rules of Bankruptcy Procedure Bankruptcy Rule states that, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Once a party in interest overcomes the *prima facie* effect given to the proof of claim, the claimant must prove the validity of the claim by a preponderance of the evidence. *In re Allegheny Int'l, Inc.*, 954 F. 2d 167 (3d Cir. 1992). The Third Circuit concisely summarized the above-referenced shifting burdens regarding proofs of claim:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY § 502.02, at 502–22 (15th ed. 1991)). In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim . . . If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant. *Holm,* 931 F.2d at 623 (quoting COLLIER § 502.02, at 502-22).

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (internal citations omitted) (emphasis added).

SLS filed a proof of claim on October 23, 2019, in accordance with the Bankruptcy Code, thus establishing the *prima facia* validity of its claim. The secured claim at issue here is for

3

$350,425.77, including interest over the life of the Plan. The Debtors assert "there is a dispute as to the manner of the creditors [sic] calculation of the amount due under applicable state law," and "the claim as filed asserts a right to interest and other charges not permitted by the applicable state law," citing to N.J. STAT. ANN. § 54:4-67(a). *Debtor's Letter in Support of Motion*, p. 1-2, ECF No. 64. However, beyond this mere conclusory statement, the Debtors fail to provide the Court with specific statutory or decisional authority, or to articulate how such authority would apply. Moreover, the Debtors do not provide the Court with a viable alternative computation of the amount owing. The Debtors, therefore, fail to meet their burden in negating SLS's proof of claim.

### III.   Tax Sale Certificates Are Afforded Protections Under Bankruptcy Law and New Jersey State Law

The Debtors argue that the allowed claim should total $217,076.00 under a "statutory formula" (ECF No. 64), which includes interest and principal due over the life of the chapter 13 plan. Notwithstanding, the Debtors do not explain to the Court their methodology underlying their calculation. In contrast, SLS demonstrates that the Superior Court's April 10, 2019 order fixes the amount due at $261,897.76, as of February 11, 2019, and further provides independent confirmation from the municipality that the current amount due totals $285,697.22. *Creditor's Opposition to Motion to Reduce Proof of Claim*, p. 2, ECF No. 79. This Court looks to the Bankruptcy Code and New Jersey state law to determine whether SLS's proof of claim was calculated properly, or whether the Debtors are correct in their position that the proof of claim should be disallowed in part.

#### A.  Bankruptcy Law

SLS, as a tax certificate holder, is treated as a secured creditor, holding a lien against the Debtors' Property. N.J. STAT. ANN. § 54:5-6; 11 U.S.C. § 506(a). However, SLS's lien arises by

4

virtue of a statute, in contrast to a consensual security agreement. *Rankin v. DeSarno*, 89 F.3d 1123, 1127-1128 (3d. Cir. 1996). Thus, to the extent SLS is over-secured, upon application of 11 U.S.C. § 506(a), it is entitled to collect interest on its claim at "the rate determined under applicable nonbankruptcy law." 11 U.S.C. § 511(a). Accordingly, this Court looks to state law to determine the appropriate treatment for SLS's claim.

### B. State Law

"Municipalities are given special treatment for their estate tax liens, not only under New Jersey state law, but also under the administrative priority provisions of the bankruptcy code . . . [due to] lawmakers' awareness of the crucial importance of real estate taxes to the overall functioning of municipal government." *Matter of Henry*, 173 B.R. 878, 883 (Bankr. D.N.J. 1993). The New Jersey Legislature enacted the Tax Sale Law, N.J. STAT. ANN. § 54:5-1 *et seq*, to provide municipalities the power to collect unpaid taxes. "Taxes on lands shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien." N.J. STAT. ANN. § 54:5-6. Pre-petition municipal taxes create and perfect tax liens that stay attached to secured property as of the petition date and entry of the automatic stay. *See Matter of Henry*, 173 B.R. at 880. "In New Jersey, a municipality, in order to collect unpaid taxes owed on a property, may sell a tax sale certificate for the amount of the taxes and interest which are in arrears." *In re Princeton Office Park, L.P.*, 504 B.R. 382, 391 (Bankr. D.N.J., 2014); *see also Simon v. Cronecker*, 189 *N.J.* 304, 318, 915 A.2d 489, 497 (2007); *Varsolona v. Breen Capital*, 180 *N.J.* 605, 618 (2004). The purchaser of a tax sale certificate thus holds the lien as a secured creditor.

An auction is conducted to sell the tax sale certificate, and the bidder pays for the sale amount, plus any taxes and outstanding interest. *See Princeton Office Park*, 504 B.R. at 391. Any

5

purchaser of a certificate acquires three rights: (1) the right to be redeemed; (2) the right to pay additional liens and earn interest thereon; and (3) the right to foreclose against the property an eliminate the junior liens. *Varsolona*, 180 N.J. at 618.

IV.     **Determining Interest Rates**

After the purchase of the tax sale certificate, "the certificate holder is entitled to reimbursement for all taxes and assessments paid on the property, as well as accrued interest and related costs, if the owner redeems the certificate." *Simon*, 189 N.J. at 319; *see* N.J. STAT. ANN § 54:5–58. The amount required to redeem includes the amount bid at sale, plus allowed costs, subsequent municipal liens paid by the lienholder, and interest. N.J. STAT. ANN. § 54:5–58. Furthermore, a tax lienholder is entitled to interest on the initial tax certificate at the rate bid at sale. N.J. STAT. ANN. § 54:5-32. Here, the tax sale certificate was bid down to zero percent interest, plus a $4,000 premium. There has been no suggestion that the Debtors are responsible for any interest on the initial certificate or the premium paid. *See Creditor's Opposition to Motion to Reduce Proof of Claim*, ¶ 20, ECF No. 79. Rather, the inquiry has been limited to the application of payments as against subsequent tax obligations paid by the Creditor.

Any subsequent tax obligation paid by a tax lienholder earns "interest at the rate or rates chargeable by the municipality." N.J. STAT. ANN. § 54:5-60. "The rate so fixed shall not exceed 8% per annum on the first $1,500 of the delinquency and 18% per annum on any amount in excess of $1,500, to be calculated from the date the tax was payable until the date that actual payment to the tax collector is made." N.J. STAT. ANN. § 54:5-67(a) "'Delinquency' means the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years." N.J. STAT. ANN. § 54:5-67(c). Therefore, in the present case, interest accrues at zero percent on the certificate and at 18% on all subsequent amounts paid by the lienholder.

V.   **Determining Payment Allocation**

Congress enacted § 511 of the Bankruptcy Code as part of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"). As explained by the House Report that accompanied BAPCA, there was no current law or uniform rate of interest applicable to tax claims. H.R. Report No. 109–31 at 101 (2005). Thus, it became necessary to "[simplify] the interest rate calculation . . . [to provide] that for all tax claims (federal, state, and local), including administrative expense taxes, **the interest rate shall be determined in accordance with applicable nonbankruptcy law**." *Id* (Emphasis added). Pursuant to § 511, state law must be applied when determining interest due to an over-secured claimant.

According to New Jersey law, "the tax collector shall then post the receipts, first to the interest, followed by the oldest delinquencies, costs and penalties which action shall then be cause for said property to be removed from sale." N.J. STAT. ANN. § 54:5-29. New Jersey law does not permit taxpayers to direct where or how payments are applied to taxes. "In New Jersey, interest on tax liens is simple interest and not compound interest." N.J. STAT. ANN. §§ 54:4-67(a), 54:5-58, 54:5-60.

In addition, municipalities are required to follow the Generally Accepted Accounting Principles ("GAAP"). *Varsolona*, 180 N.J. at 605 (citing N.J.A.C. 5:31-7.1). As such, "payments received from the debtor are to be applied first to penalty and administrative cost charged, second to interest receivable, and third to outstanding debt principal, per Federal Claims Collection Standards, 4 C.F.R. 102.13(f)." Federal Accounting Standards Advisory Board Handbook, Version 12 (June 2013), SSFAS—1 at page 12. The Debtors are attempting to bifurcate the principal from the interest by applying payments to the interest-bearing principal first. However, any deviation from such allocation of payments has been rejected by the New Jersey Supreme

7

Court. *See*, *e.g.*, *Darr v. Kervick*, 31 N.J. 476, 488 (1960); *State of New Jersey v. Erie Railroad Company*, 23 N.J. Misc. 203, 210 (1945). Therefore, Debtor may not deviate by applying payments to principal first and interest thereafter.

Furthermore, the Debtors contend that "the applicable state law does not require the debt to be paid in equal monthly installments or otherwise restrict the debtor's ability to allocate payments between principal and interest . . . and 11 U.S.C. [§] 1325(a)(5) allows the debtor to make such allocation in the plan . . . ." *Debtor's Letter in Support of Motion*, p. 1-2, ECF No. 64. This is a misstatement of the law. Section 1325(a)(5) of the Bankruptcy Code provides for three requirements, one of which must be met to confirm a plan that concerns a secured claim. In this regard, the requirement pertinent to this case at bar is that "property to be distributed pursuant to this subsection is in the form of periodic payments, [and] such payments shall be in **equal monthly amounts**." 11 U.S.C. § 1325(a)(5)(iii)(I) (emphasis added). Although there is limited formal legislative history revealing the intention of the 2005 amendment to include language concerning equal monthly amounts, courts have acknowledged that the purpose of this amendment is to prohibit the use of repayment schemes, such as balloon payments[1]. *See In re Soppick*, 516 B.R. 733, 753–54 (Bankr. E.D. Pa. 2014); *see also In re Bollinger*, No. BR 10-62344-FRA13, 2011 WL 3882275, at *3 (Bankr. D. Or. Sept. 2, 2011).

In the present matter, should the Debtors be permitted to apply payments to the interest-bearing principal first, rather than the interest as mandated under state law, the principal would continuously change every month. While the Debtors do not directly suggest making balloon payments to satisfy their debt, their methodology would by necessity require unequal monthly

---

[1] "[Section 1325(a)(5)(B)(iii)(I)] was passed to cure certain abuses in Chapter 13 bankruptcy cases, most notably, backloading or creating lump sum payments at the end of a case commonly referred to as balloon payments." 44 A.L.R. Fed. 3d Art. 4 (Originally published in 2019).

8

payments. Indeed, the Debtors have not proposed a specific payment scheme under which all monthly plan payments to SLS would be in equal amounts. Thus, the relief sought contravenes the plain language of 11 U.S.C. § 1325(a)(5)(iii)(I) and must be denied. *See In re NJ Affordable Homes Corp.,* No. 05-60442 (DHS), 2013 WL 6048836, at *32 (Bankr. D.N.J. Nov. 8, 2013) ("If the language is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms.").

The Debtors must satisfy SLS's claim in full through equal monthly payments, first of which would be applied to interest, then older delinquencies, and then against more recent assessments.

## VI. Conclusion

For the foregoing reasons, the Court denies the Debtors' motion to modify the Proof of Claim submitted by SLS. On January 16, 2020, the Court entered an Order Denying the Debtors' Motion to Reduce the Claims of SLS (ECF No. 85), as well as an Order Granting Prospective Relief from the Automatic Stay for SLS (ECF No. 86).

*[signature]*
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: March 3, 2020